# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MUNIQUE VIANA SANTOS<br>FRANCIS VIANA<br>(A# 079-448-320)<br>    Petitioners<br><br>v.<br><br><br>KEVIN McALEENAN,<br>Acting Secretary of Homeland Security,<br>CHRISTOPHER CRONEN,<br>Immigration and Customs Enforcement,<br>ANTONE MONIZ<br>Superintendent of Plymouth County Correctional Facility,<br>JOSEPH D. MCDONALD, JR,<br>Sheriff of Plymouth County<br>    Respondents | C.A. No. 1:19-cv-11296-MLW<br><br><br><br>**PROPOSED AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**REQUEST FOR RELEASE FROM ICE CUSTODY** |

## PETITIONERS' AMENDED MOTION FOR RECONSIDERATION

Now come the Petitioners, and, pursuant to an Order of this Court dated September 16, 2019, submit their Motion for Reconsideration.

### I.  PROCEDURAL BACKGROUND

On September 16, 2019, this Court issued an order in which it denied the Petitioners' Motion to File a Proposed Amended Petition for Habeas Corpus and vacated the Stay of Removal which had been in effect with respect to the Petitioner, Francis Viana, since June 13, 2019. In issuing its decision, however, the Court *stayed* its order by thirty (30) days to allow the Petitioners time to file a Motion for Reconsideration. See Court Order dated September 16, 2019, p. 6 ¶ 2.

As a legal basis for the Motion for Reconsideration, the Court stated that the Petitioners must show that "a fundamental miscarriage of justice would result from a failure [by the Court] to entertain the claim." See <u>Court Order</u>, p. 3 ¶ 3, citing <u>McCleskey v. Zant</u>, 499 U.S. 467, 494-495 (1991). Pursuant to the Court's order, the Petitioners in this action set forth their factual and legal argument in support of their Motion for Reconsideration.

## II.     ARGUMENT

### A. <u>The US Supreme Court has held that a miscarriage of justice occurs when a Court fails to entertain a claim of a Petitioner who demonstrates that the facts of his criminal case evidence a colorable claim of factual innocence.</u>

The Petitioners assert that their Motion for Reconsideration should be allowed by this Court because a fundamental miscarriage of justice would result if this Court fails to do so. In <u>McCleskey</u>, the US Supreme Court stated that "the failure to raise [a] claim in an earlier petition may nonetheless be *excused* if [the Petitioner] can show that a fundamental miscarriage of justice would result from a failure to entertain [his/her] claim." <u>McCleskey</u> at 494-495. The <u>McClesky</u> Court went on to hold that the "fundamental miscarriage of justice" exception was satisfied when a "prisoner [made] the requisite showing… that, under the probative evidence, he ha[d] a colorable claim of factual innocence." <u>Id</u>. at 454, citing <u>Engle v. Isaac</u>, 456 U.S. 107 (1982).

Other Supreme Court decisions have also affirmed the Court's position that a petitioning prisoner must meet the "colorable claim of factual innocence" standard with respect to the facts surrounding his criminal case, in order to have his Petition for Habeas Corpus granted. In 1986, the Court held that "in the light of the historic purpose of habeas corpus and the interests implicated by successive petitions for Federal habeas relief from a state conviction, we conclude that the 'ends of justice' require federal courts to entertain such petitions only where the prisoner

supplements his constitutional claim with a colorable showing of factual innocence." See Kuhlmann v Wilson, 477 U.S. 436, 454 (1986).

The Kuhlmann Court explained in greater detail what the "colorable showing of factual innocence" involved. Citing Justice Friendly, the Court stated that "a prisoner … make[s] a colorable showing of innocence by show[ing] a fair probability that, in light of all the evidence ***the trier of the facts would have entertained a reasonable doubt of his guilt.*** (emphasis added)" Kuhlmann at Footnote 17, citing Engle v. Isaac, 456 U.S. 107, 108. (1982).

The Kuhlmann Court went on to say that "Judge Friendly persuasively argued then, a requirement that [a] ***prisoner who comes forward with a colorable showing of innocence identifies those habeas petitioners who are justified in again seeking relief from their incarceration***. (emphasis added)" See Kuhlmann at 454. The Court went on to state that "we adopt this standard now to effectuate the clear intent of Congress that successive federal habeas review should be granted only in rare cases, but that it should be available when the ends of justice so require. The prisoner [must] make the requisite showing by establishing that, under the probative evidence, he has a colorable claim of factual innocence." Id. at 454.

In this Court's decision of September 16, 2019, the Court provided an explanation of the "fundamental miscarriage of justice" exception which was in alignment with the Supreme Court's decisions in Engle, Kuhlmann and McClesky. In its order, this Court stated that "the court may conclude that, but for the constitutional violation, petitioner 'probably' could not have been found responsible for the offense." See Court Order citing McClesky at 494.

**B. <u>There is overwhelming evidence in official court records and police reports to demonstrate that Francis Viana has a colorable claim of innocence and that a trier of fact would indeed find that there was a reasonable doubt of his guilt.</u>**

In Mr. Viana's case, the Boston Municipal Court records, Boston Police Department reports and Sworn affidavits of three disinterested eye witnesses to the events of June 3, 2018, provide overwhelmingly evidence that Mr. Viana would very likely ***not have been found guilty beyond a reasonable doubt by a Trier of fact*** of the crime for which he was charged. As discussed above, the legal standard for meeting the "miscarriage of justice" exception, is for "a prisoner [to] make a colorable showing of innocence which shows a fair probability that, in light of all the evidence the <u>***trier of the facts would have entertained a reasonable doubt of his guilt***</u> (emphasis added)." See <u>Kuhlmann</u> at Footnote 17, citing <u>Engle v. Isaac</u>, 456 U.S. 107, 108. (1982).

In the early morning hours of June 3, 2018, the Petitioner, Francis Viana, while enjoying his wedding anniversary with his wife at a night club in Boston, was confronted with the unfounded accusation that he had inappropriately groped a cocktail waitress after making some sexist remarks towards. As a result of this absurd accusation, Mr. Viana was promptly arrested by the Boston Police Department at the night club and charged at the Boston Municipal Court with the crime of indecent assault and battery on a person who had attained the age of 14, without the consent of such person, in violation of M.G.L. c. 265 § 13H. See <u>Exhibit A</u>.

Under <u>Massachusetts Criminal Model Jury Instruction 6.120</u>, "assault and battery", for purposes of adjudicating whether a violation of M.G.L. c. 265 § 13H has occurred, is defined as "deliberately making contact with someone without [their] consent or in a way that's likely to cause physical harm." In this instance, it is apparent that the waitress was accusing Mr. Viana of the first form of assault of battery, rather than the second. Moreover, the criminal code establishes that "in order to establish the first form of assault — an attempted battery — the Commonwealth must prove beyond a reasonable doubt that the defendant intended to commit a battery — that is, a harmful or an unpermitted touching — upon the alleged victim, and took some overt step toward accomplishing that intent, and came reasonably close to doing so."

The evidentiary exhibits which are enclosed with this Motion provide a substantial amount of evidence which show that ***<u>the Commonwealth would be unable to meet its burden that Mr. Viana engaged in or even intended to commit a harmful or unpermitted touching of the alleged victim</u>***. To this extent, the enclosed evidentiary exhibits meet the "color claim of innocence" standard which is the prerequisite for demonstrating that a failure by this Court to grant Mr. Viana's Petition for Habeus Corpus would inevitably result in a "fundamental miscarriage of justice" as described in the <u>McCleskey</u> court's decision. <u>McCleskey</u> at 454, citing <u>Engle v. Isaac</u>, 456 U.S. 107 (1982).

The first piece of evidence which discredits the Commonwealth's criminal charge of "indecent assault and battery" is the Boston Police's own incident report which was included with the criminal complaint which was filed with the Boston Municipal Court. In the BPD's report, the arresting officer unequivocally indicates that the **_accuser never actually saw Mr. Viana touch her_**. More specifically, the charging officer states that "the victim stated that while she had her back turned, the suspect walked up and put his hand up her skirt and grabbed her buttocks." Following this alleged occurrence, the report states that "the victim stated that when she turned around the suspect was the only one standing there." It was at this point, the report concluded, that "the victim stated that she called club security". See Exhibit A.

The above-described incident report constitutes an adverse admission by a party opponent, on the accuser's part, because it shows that **_she would be unable, at trial, to identify Mr. Viana as the person who allegedly committed an unpermitted touching_**. Moreover, as attested to in three separate sworn affidavits from three disinterested witnesses who were sitting next to Mr. Viana's at his table that night, Mr. Viana was positioned at the end of the table, which was only a few feet away from where the waitress stood while she waited for the bartender to make drinks. See Exhibit B.

The accusing waitress' presumption that it must have been Mr. Viana who allegedly groped her, not only disregards the fact that he was standing next to her merely because of where his seat was positioned at the VIP table, but also discounts the glaring fact that there were numerous other male night club patrons standing within inches of the waitress at that time. According to the sworn affidavits of the three eye witnesses, these male night club patrons had been lingering at the VIP bar the throughout the evening, waiting for their drinks, because they did not have a reserved table to order their drinks from.

These three witnesses also confirm, in no uncertain terms, that they were seated within a few feet of Mr. Viana the entire evening while facing him (at a circular table) and that at no time did Mr. Viana commit an unwanted touching or make any statements to the VIP room waitress who accused Mr. Viana of assaulting her. One eye witness, Deborah Araujo, stated in a sworn affidavit that "Francis was sitting directly in front of me" and that she "did not see Francis touch anyone or say anything [as] the bartender walked past us and went to the bar."

Ms. Araujo also casts doubt on the accuser's presumption that Mr. Viana must have been the one who inappropriately touched her simply because he happened to be standing next to her, by describing the close quarters of the VIP area and the multitude of other men who could have easily been the culprit of the unwanted touching. Specifically, Ms. Araujo noted that "the area was not large and there were a lot of people walking past us constantly." See Exhibit B.

In a sworn affidavit signed on the same day, another eye-witness sitting at Mr. Viana's table, Nelson Torres, exclaimed in his affidavit that "the employee falsely accused Francis of touching her."  Mr. Torres, like Ms. Araujo, had a clean line of sight of the Petitioner and was sitting so close to him that it would have been impossible, if not inconceivable, that either he, his wife Claudia or Ms. Araujo would not have noticed Mr. Viana making a derogatory sexual statement or engaging in such an outrageous act as groping a waitress' buttocks.  See Exhibit B.

 Since the initial submission of Ms. Araujo and Mr. Torres' sworn affidavits to this Court on January 28, 2019 by prior counsel, a third disinterested eye witness who was seated at Mr. Viana's table on the morning of June 3, 2018 has also come forward, one Claudia Ferreira do Nascimento, and attested to the same statements as Mr. Torres and Ms. Araujo. Ms. Nascimento, in fact, goes into even greater detail, casting even greater reasonable doubt on the alleged victim's account of the events that transpired that evening.

Specifically, Ms, Nascimento states that "my husband and I, along with Deborah Araujo, remained seated next to and facing Munique and Francis Viana for the entire duration of the evening." She further states that "at all times throughout the evening of June 2, 2018 and the morning of June 3, 2018, we had a direct and close-up view of Francis Viana because he was seated only a few feet away and we were facing him". She further states that the VIP section where our table was located was a very narrow space and there were many people standing around who did not have assigned tables like us." She further states that "approximately three feet away from the right side of our VIP table was the VIP bar" and that "seated closest to the bar, at our table, was, Francis Viana." She also states that "in order for our waitress to transport beverages to the customers in the VIP section who had reserved VIP tables like us, the waitress, by necessity, had to walk past our table and then stand in place, for minutes at a time, in the tiny, three foot cavity of space between our table and the VIP bar, while she waited for the bartender to prepare the ordered drinks." She further states that "at all times throughout the evening, everyone seated at the table had a clear and close view of everything that Mr. Francis Viana was saying and doing, because they were only a few feet away from him and looking right at him the whole time."

To explain why Mr. Viana was standing instead of sitting at the time of the alleged assault and battery on the accuser, Ms. Nascimento states that "shortly after midnight, Francis Viana, Munique Viana, Deborah Araujo, my husband, Nelson and myself, all stood up and began dancing in place, all while remaining at our table" and that "at some point, as we were all standing, our waitress walked by our table in plain view of myself, my husband, Deborah Araujo and Munique Viana and stood in the small three foot cavity of space which existed between our table and the VIP bar, with her back to us."

Ms. Nascimento further explains that "the waitress was surrounded by numerous other male club patrons, who none of us knew, who were also standing at the VIP bar waiting on the bartender to prepare drinks because they didn't have a table and therefore no waitress to order from" and that "at all times relevant, I, my husband, Deborah Araujo and Munique Viana could see any interaction between Francis Viana and our waitress while she stood next to him at the VIP bar." Ms. Nascimento concludes her sworn observational statements by stating that "at no time did Francis Viana ever make any comment or touch our cocktail waitress in any way, shape or form." After reviewing Ms. Nascimento's affidavit, both Mr. Torres and Munique Viana signed identical affidavits corroborating all of her statements. See Exhibit B.

Between the fact that the accusing alleged victim would not, **_by her own admission_**, be able to identify Francis Viana as the perpetrator of the assault against her, and the fact that there are three credible eye witnesses who would contradict the accuser's version of events at trial, it is indisputable that a Trier of fact would find that indeed a reasonable doubt of Mr. Viana's guilt existed and he would be acquitted of all charges. By this standard, and that set forth by this very Court in its order of September 16, 2019, that Mr. Viana must show that he "probably could not have been found responsible for the offense", it is clear that the Commonwealth would not have been able to meet its burden of proof on the charge of indecent assault and battery.

### III.   CONCLUSION

For the reasons discussed above, we move this Court ALLOW the aforesaid Motion for Reconsideration on the grounds that a fundamental miscarriage of justice would result if Mr. Viana were removed from the United States and order that Mr. Viana be released from ICE custody, and thereby GRANT his Petition for Habeus Corpus.

Respectfully submitted,

Petitioners,
Munique Viana Santos
Francis Viana

By their Attorney,

/s/ Gregory M. Sullivan, Esq.
BBO# 485970
Law Offices of Gregory M. Sullivan
214 Commercial St. Suite 206
Malden, MA 02148
Tel. (781) 608-2334
gsullivanlaw@aol.com

September 26, 2019

## **CERTIFICATE OF SERVICE**

I, Gregory M. Sullivan, Esq., counsel for the Petitioners, attest that I have arranged for electronic service via ECF on the Respondents this 26th day of September 2019 the foregoing document.

/s/ Gregory M. Sullivan
Gregory M. Sullivan